No. 22-2551

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

Daniel Leisten,

*Plaintiff-Appellant*

v.

CBS Broadcasting, Inc., et al.

*Defendants–Appellees*

On Appeal from the United States District Court for the
Western District of Pennsylvania
Docket Number 2:21-cv-000974
District Judge Christy Criswell Wiegand
Magistrate Judge Lisa Pupo Lenihan

**APPELLANT'S REPLY BRIEF**

> Blair T. Preiser, Esquire
> PA Bar No. 208406
> THE LYNCH LAW GROUP, LLC
> 501 Smith Drive, Suite 3
> Cranberry Township, PA  16066
> Tel:  724-776-8000
> Fax:  724-776-8001
> bpreiser@lynchlaw-group.com
> *Attorney for Plaintiff-Appellant Daniel Leisten*

# **TABLE OF CONTENTS**

**TABLE OF CONTENTS** ...................................................................................2

**TABLE OF AUTHORITIES** ............................................................................3

**ARGUMENT** .....................................................................................................4

    **1. The Date on Which the Statute of Limitations Was Triggered Is A Question of Fact Not Evident on the Face of the Complaint.** ..........................4

    **2. The Single Publication Rule Is Irrelevant to the Statute of Limitations Inquiry in this Case.** ..........................................................................................5

    **3. Applicability of the Discovery Rule Involves Questions of Fact Inappropriate for Determination at This Stage.** ...........................................11

    **4. The District Court Erred in Denying Mr. Leisten Leave to Amend his Complaint to Include Claims Involving Private Communications.** ...............15

    **5. The Interests of the Parties Are Appropriate Considerations in Determining Applicability of the Statute of Limitations.** .............................17

**CONCLUSION** ................................................................................................18

**CERTIFICATIONS** ........................................................................................19

**CERTIFICATE OF SERVICE** .......................................................................20

# TABLE OF AUTHORITIES

**Cases**

*Andrews v. Time, Inc.*, 690 F. Supp. 362 (E.D. Pa. 1988) ................................. 7, 10
*Bailey v. Dell Pub. Co.*, 790 F. Supp. 101 (W.D. Pa. 1992) ........................................ 4
*Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822 (3d Cir. 2011) ............................... 11
*Barrett v. Catacombs Press*, 64 F. Supp. 2d 440 (E.D. Pa. 1999) ..................... 13, 14
*Bradford v. Am. Media Operations, Inc.*, 882 F. Supp. 1508 (E.D. Pa. 1995) 4, 5, 7, 15
*Coviello v. Berkley Pub'g Group*, 2017 U.S. Dist. LEXIS 8200 (M.D. Pa. Jan. 19, 2017) ......................................................................................................... 4
*Crouse v. Cyclops Inds.*, 745 A.2d 606 (Pa. 2000) .................................................... 11
*Dominiak v. Nat'l Enquirer*, 266 A.2d 626 (Pa. 1970) ............................. 6, 7, 10, 17
*Drozdowski v. Callahan*, No. 07-cv-01233-JF, 2008 U.S. Dist. LEXIS 10164 (E.D. Pa. Feb. 12, 2008) ................................................................................... 14
*Fox v. Smith*, 263 A.3d 555 (Pa. 2021) .................................................................. 6, 9
*Graham v. Today's Spirit,* 468 A.2d 454 (Pa. 1983) ......................................... 5, 7, 8
*Jacobs v. Journal Publ'g Co. D/B/A/ the Albuquerque Journal*, No. 1:21-cv-00690-MV-SCY, 2022 U.S. Dist. LEXIS 88396 (D.N.M. May 17, 2022) ..................... 16
*Manning v. Flannery*, No. 2:10-cv-178, 2012 WL 1111188 (W.D. Pa. Mar. 31, 2012) ..................................................................................................... 11
*Schmidt v. Skolas*, 770 F.3d 241 (3d Cir. 2014) ...................................................... 11
*Shively v. Bozanich*, 80 P.3d 676 (Cal. 2003) .......................................................... 16
*The Knit With v. Knitting Fever, Inc.*, No. 08-4221, 2009 U.S. Dist. LEXIS 30230 (E.D. Pa. Apr. 8, 2009) ........................................................................ 11

# ARGUMENT

1. **<u>The Date on Which the Statute of Limitations Was Triggered Is A Question of Fact Not Evident on the Face of the Complaint.</u>**

The trial court's finding that the expiration of the statute of limitations was determinable at this stage of the proceedings is in error. In Appellees' Brief, Defendants make much of the Exhibits attached to Plaintiff's Complaint to argue that the expiration of the statute of limitations is apparent from the face of that pleading. *See* Appellee's Brief, p. 13. There is no dispute that the defamatory material was first posted by Defendants on May 19, 2020. The error by the lower court was in determining, as a matter of law, that the initial posts constitute publication for purposes of a defamation claim brought by this particular plaintiff.

As recognized by Defendants, the statute does not begin to run until the allegedly defamatory communication was published. *Id.* at 12. Defendants fail to recognize, however, as did the trial court, that there is a significant difference between "publication," as the term is generally understood and used in day-to-day conversation, and "publication," as it applies to defamation actions. The latter is a more nuanced and fact-specific inquiry that requires consideration of facts specific to a particular plaintiff in a particular case. *See, e.g., Bailey v. Dell Pub. Co.*, 790 F. Supp. 101, 105 (W.D. Pa. 1992), *aff'd*, 983 F.2d 1049 (3d Cir. 1992) (Question of when the allegedly defamatory book **became available in Pennsylvania** constitutes

a question of fact); *Coviello v. Berkley Pub'g Group*, 2017 U.S. Dist. LEXIS 8200 (M.D. Pa. Jan. 19, 2017); *Bradford v. Am. Media Operations, Inc.*, 882 F. Supp. 1508 (E.D. Pa. 1995). While Plaintiff did allege that reports were posted online in May 2020, Plaintiff did not make allegations relating to when publication occurred for statute of limitations purposes, mostly because those facts are unknown pending discovery. *See* Appellant's Brief, pp. 24-25.

## 2. The Single Publication Rule Is Irrelevant to the Statute of Limitations Inquiry in this Case.

As demonstrated by Appellees' Brief, Defendants continue to misconstrue the single publication rule as a rule that determines when a particular statute of limitations has been triggered. *See* Appellees' Brief, pp. 14-15. Although the single publication rule may sometimes inform a statute of limitations analysis where there exist questions of republication, it does not itself determine when original publication occurs so as to trigger the statute of limitations for a particular plaintiff. *See Bradford*, 882 F. Supp. at 1514 ("On its face, the Uniform Single Publication Act only limits the number of suits a plaintiff may bring on a single publication of defamatory material; it is silent as to when the statute of limitations begins to accrue on a defamation or invasion of privacy claim.").

The rule simply limits potential for limitless causes of action **based on third parties encountering the same publication of defamatory material in the future**.

*See* Appellees' Brief, p. 15 (quoting *Graham v. Today's Spirit,* 468 A.2d 454, 467 (Pa. 1983) for the proposition that "Without the [single publication] rule, 'the statute of limitations would be meaningless in that an action could be filed any time a defamatory article was read, no matter the **time lag between the actual printing of the article and the reading of the article by a third party**.'") (emphasis added).

That the single publication rule applies, not to the accrual of a defamation claim, but to limit suits based on potentially limitless future third-party encounters with the defamatory material, is supported by the Pennsylvania Supreme Court's recent decision in *Fox v. Smith*. *See Fox v. Smith*, 263 A.3d 555, n. 3 (Pa. 2021) ("both the initial act of communication and receipt and apprehension by another are necessary to publication . . .").

As set forth in more detail in Mr. Leisten's opening brief, the Pennsylvania Supreme Court in *Dominiak* made clear that nothing under Pennsylvania law mandates that the statute of limitations in a defamation action must run from the time of the initial presentation of material to the public. Rather, whether defamatory material has been published so as to trigger the statute of limitations for a particular plaintiff is governed by the first publication statewide in a plaintiff's place of residence. Appellant's Brief, pp. 21-24 (citing *Dominiak v. Nat'l Enquirer*, 266 A.2d 626, 629 (Pa. 1970) and other cases).

Defendants' contention that such a standard would "eviscerate the single

publication rule," Appellees' Brief, p. 16, again is grounded in a misconstrued interpretation of *Graham* and the single publication rule. Indeed, the rules are not mutually exclusive, and, where appropriate, may be applied together. *See.*, *e.g.*, *Coviello*, 2017 U.S. Dist. LEXIS 8200 (in the context of a nationally-advertised book, applying both the single publication rule and the requirement that "the statute of limitations begins as of the first date on which a book becomes available for sale in the Commonwealth.").

Defendants further try to evade the effect of *Dominiak* by arguing that the case is "no longer good law" due to the later *Graham* decision. *See* Appellees' Brief, p. 16, n. 6. Defendants are simply incorrect. As noted below, *Graham* is not a case directly concerned with statutes of limitations. Further, even *Graham* recognizes *Dominiak* as in accord with the Court's decision. *See Graham*, 468 A.2d at 457. In fact, courts routinely rely on *Dominiak* when considering publication dates for specific defamatory material in statute of limitations analyses as applied to specific plaintiffs. *See*, *e.g.*, *Andrews v. Time, Inc.*, 690 F. Supp. 362, 366 (E.D. Pa. 1988) (citing *Dominiak*, 266 A.2d at 629 ("*Dominiak* stands for the proposition that the date of first *statewide* publication, rather than of first nationwide publication, should trigger the statute of limitations.") (emphasis in opinion); *Bradford*, 882 F. Supp. 1508 at 1512 ("We believe that this case is governed by the Pennsylvania Supreme Court's 1970 decision in *Dominiak* . . . As we construe that case, the Bradfords may

7

select the last publication date of the September 7, 1993 edition of *Star* in Pennsylvania to support their claims . . ."); *id.* at 1517 (interpreting *Dominiak* in the light of *Graham* . . . we hold that the Bradfords may select any time within which the Star became available in Pennsylvania on which to base their defamation and invasion of privacy actions.").

Although Defendants rely on *Graham* to support their argument regarding the statute of limitations, *see* Appellees' brief, pp. 14-15, *Graham* did not involve any assertion of untimeliness under the statute of limitations, and the quotes from that opinion are taken out of context in Appellees' Brief. While *Graham* does refer to the "original publication of the defamatory material," it is not in the context of determining whether the statute of limitations has been triggered. *Graham*, 468 A.2d, at 457. To the contrary, "original publication of the defamatory material" is used to describe the "tortious conduct to be discouraged" that "results in a cause of action." The Pennsylvania Supreme Court uses this phrase in the context of explaining why a single edition of a newspaper, for example, would give rise to only one cause of action, even if that newspaper were purchased and read by multiple people. *Id.*

Defendants interpret the Supreme Court's acknowledgment in *Fox* that the single publication rule applies to online content as support for their contention that online material is "mass media" per se which triggers statutes of limitations for

8

defamation claims the instant it is posted. Appellees' Brief, p. 17. The *Fox* decision does just the opposite, however, making clear that accrual of a defamation claim is dependent on the receipt and apprehension of defamatory material by individuals in a plaintiff's community, which in turn are questions of fact that are not addressed in Mr. Leisten's Complaint.

Defendants attempt to distinguish *Fox* on the grounds that it involved questions of venue as opposed to questions of timing. However, it is the Pennsylvania Supreme Court's focus on location that gives this case its primary relevancy. Not only did *Fox* make clear that the "publication" it was discussing was the same type of "publication" addressed by the single publication rule, but implicit in its explanation that publication for purposes of accrual may occur in different places is the understanding that publication for purposes of accrual may occur at different times. According to the Court:

> A cause of action for defamation arises where publication of defamatory statements occurs. *Accord Gaetano*, 426 Pa. at 182, 231 A.2d at 755. And publication occurs where a third-party recipient understands the statement as being defamatory. *Accord id.*
>
> When a person is defamed via a medium with worldwide accessibility, a cause of action may arise in multiple venues. Indeed, relative to defamatory statements, the General Assembly anticipated this in the Uniform Single Publication Act, which provides for a single cause of action for damages for such statements and specifically that "[r]ecovery in any action shall include all damages for any such tort suffered by the plaintiff in all jurisdictions." 42 Pa. C.S. §8341(b).

*Fox*, 263 A. 3d 555, 561.

The Court explains that the Uniform Single Publication Act would foreclose multiple suits based on the publication of a single defamatory statement in multiple locations, but says absolutely nothing regarding the holdings of *Dominiak*, *Andrews*, and *Bradford* that permit a plaintiff to choose which publication on which to base its lawsuit. *See Andrews*, 690 F. Supp. at 366 (citing *Dominiak*, 266 A.2d at 629 ("*Dominiak* stands for the proposition that the date of first *statewide* publication, rather than of first nationwide publication, should trigger the statute of limitations.") (emphasis in opinion); *Bradford*, 882 F. Supp. at 1512. ("We believe that this case is governed by the Pennsylvania Supreme Court's 1970 decision in *Dominiak* . . . As we construe that case, the Bradfords may select the last publication date of the September 7, 1993 edition of *Star* in Pennsylvania to support their claims of libel . . .").

With respect to Defendants' flippant dismissal of concerns over unscrupulous publishers as unnecessary in the context of internet publications, (*see* Appellees' Brief, p. 16, n. 6), it could not be clearer that such concerns are more tangible now than ever before, and Defendants are doing exactly what the Pennsylvania Supreme Court has cautioned against in discussing the statute of limitations in the defamation context. They are attempting to escape liability for failure to do even the most basic investigation by advocating for a black letter standard requiring all individuals to regularly "Google" themselves in to determine whether some lazy reporter in a far-

off state has called them a murderer. A per se rule that statements posted to the internet are automatically published worldwide for defamation purposes is untenable, unjust, and contrary to the Pennsylvania Supreme Court precedent that actually discusses the statute of limitations in the context of mass media.

3. **<u>Applicability of the Discovery Rule Involves Questions of Fact Inappropriate for Determination at This Stage.</u>**

In the context of the discovery rule, questions regarding whether due diligence is required, and whether reasonable due diligence was performed, are questions of fact that cannot be decided at this stage of the proceedings. Reasonable diligence is "what is expected from a party ***who has been given reason to inform himself of the facts*** upon which his right to recovery is premised." *Manning v. Flannery*, No. 2:10-cv-178, 2012 WL 1111188 at *13 (W.D. Pa. Mar. 31, 2012) (quoting *Crouse v. Cyclops Inds.*, 745 A.2d 606, 611 (Pa. 2000)) (emphasis added). **"[T]here must be some reason to awaken inquiry and direct diligence in the channel in which it would be successful.** This is what is meant by reasonable diligence." *Id.* (internal quotation and citation omitted) (emphasis added). *Schmidt v. Skolas*, 770 F.3d 241, 251 (3d Cir. 2014) (citing *Barefoot Architect, Inc. v. Bunge*, 632 F.3d 822, 835 (3d Cir. 2011)) (when "the pleading does not reveal when the limitations period began to run . . . the statute of limitations cannot justify Rule 12 dismissal"); *The Knit With v. Knitting Fever, Inc.*, No. 08-4221, 2009 U.S. Dist. LEXIS 30230, at *15-16 (E.D. Pa. Apr. 8, 2009) (denying motion to dismiss where it was "not evident on the face

of the complaint . . . whether the discovery rule saves" the plaintiff's claims).

Defendants wish to create a black and white rule that deems anything posted to the internet as mass media with which any potential plaintiff is charged with knowledge, or at the very least, a duty to investigate, from the moment that material is posted. *See* Appellees' Brief, pp. 26-27. According to Defendants, "the law charges a plaintiff with reasonable diligence." *Id.* at 26. Defendants' assertion only holds water, however, if a court may determine, *as a matter of law*, that reasonable diligence requires the regular and proactive policing of one's reputation through search engines or some other means.

At its core, Defendants' position regarding due diligence is the imposition of an interminable burden on potential defamation plaintiffs to police their own reputations through search engines or else forego their rights to seek recompense for reputational harm. Mr. Leisten contends that the discovery rule should apply where appropriate in online defamation cases because it is not reasonable for Defendants to shift their burden of reasonable investigation to potential defamation plaintiffs simply by utilizing an online format. This dispute cannot be resolved as a matter of law.

Defendants cite to a number of cases in support of their contention that the discovery rule can never apply to information posted on the internet because such information constitutes "mass media." However, the courts making those decisions,

usually on summary judgment after some fact discovery regarding publication issues, made sure to include, not only that the material at issue was theoretically available, but that it **was purposefully and widely advertised in a way that a reasonable plaintiff should not have been able to miss.**

For example, in *Coviello*, after noting that "The Pennsylvania Supreme Court has not ruled on whether the discovery rule applies to mass-media defamation claims," the court held that the case was a "mass-media case" precisely because of the wide-ranging distribution and promotion. *Coviello*, 2017 U.S. Dist. LEXIS 8200, at *13). In so holding, the court found that "the book was widely publicized and was sold in retail stores nationwide and online, such as through Amazon.com." *Id.* The court also found that public book signings drawing crowds, including one advertised in a local newspaper. *Id.* at *5, *13. The *Coviello* court decided the motion on summary judgment after allowing for limited discovery "relevant to the date the book was first published, **how many copies of the book were sold, and how the book was publicized in Pennsylvania**." *Id.* at *5 (emphasis added).

*Barrett v. Catacombs Press*, also cited by Defendants, was likewise a ruling made on summary judgment. In that case, the court noted that the discovery rule was not applicable to defamation cases "where the allegedly defamatory material was published**, advertised** and distributed freely to any willing purchaser." *Barrett v. Catacombs Press*, 64 F. Supp. 2d 440, 446 (E.D. Pa. 1999). In discussing whether

13

a publication had occurred, the court stated that a publication must be for mass sale to the public. *Id.* According to the court, in "media-public" cases, "for there to be a publication, two tests are employed: 1) there must be an actual release or distribution of media and 2) the party authorizing the release or **distribution must intend to bring about a mass sale to the public reasonably calculated to achieve such a mass sale**." *Id.* No doubt as to the intention to bring about a mass sale could be entertained in *Barrett* because the authors advertised at national book conventions in Tampa and Chicago attended by tens of thousands of people, and promoted the book through two different websites. *Id.* at 446-447. The court held that "[t]he totality of activities undertaken by Defendants brings us to conclude that, as a matter of law, a publication had occurred . . ." that would constitute a "media-public" case and foreclose application of the discovery rule.

Again, in another summary judgment case relied on by Defendants, the Eastern District of Pennsylvania in *Drozdowski* held that the discovery rule did not apply to a book the plaintiff conceded had been published 4 years prior to suit, and had been actively distributed all over the world via Amazon.com and retail outlets, including in Plaintiff's home state. According the court, "the discovery rule has no application 'where the allegedly defamatory material was published, **advertised and distributed freely** to any willing purchaser." *Drozdowski v. Callahan*, No. 07-cv-01233-JF, 2008 U.S. Dist. LEXIS 10164, at *3 (E.D. Pa. Feb. 12, 2008) (citing

14

*Barrett*, 64 F. Supp. 2d at 445) (emphasis added).

Likewise, in *Bradford*, another case decided on summary judgment, after a lengthy discussion of facts affecting when publication occurred in Pennsylvania, the Court declined to apply the discovery rule in relation to defamatory material contained in "the third most widely circulated weekly publication in America." *Bradford*, 882 F. Supp. at 1519.

There is a vast and significant difference between heavily advertised books and popular nationwide publications on the one hand, and a one-time news story posted to the website and online accounts of a news station specific to Western Pennsylvania, on the other. There is nothing to suggest, in the complaint or otherwise, that the story or Defendants' websites were widely or heavily publicized or advertised in Florida. All of the cases cited by Defendants involving "mass media" are therefore inapposite to a determination of whether the discovery rule should apply to this case involving a Florida plaintiff with no connection to the Commonwealth and no reason to suspect any wrongdoing at the time of initial posting.

### 4. **The District Court Erred in Denying Mr. Leisten Leave to Amend his Complaint to Include Claims Involving Private Communications.**

The District Court denied Mr. Leisten the opportunity to amend his complaint to clarify his defamation claims against the John Doe Defendants based on internal

15

communications informing the defamatory statements ultimately posted online. The District Court based this decision on the conclusion that the private statements sought relief for the same injury due to statements with the same content, noting that both the online and private statements were alleged to be defamatory per se communications that accused Mr. Leisten of committing murder. Appx20. According to the District Court, any private defamatory statements that led up to defamatory statements made in public were not subject to the discovery rule because Mr. Leisten is charged with notice of those claims, not on the day Mr. Leisten discovered his defamation claim with respect to the statements made online, but on the day the statements were made. Appx21.

In so holding, the District Court relies on *Shively v. Bozanich*, 80 P.3d 676, 690 (Cal. 2003) at Defendants' recommendation. However, that case dealt with the application of the discovery rule to defamation cases under California law, which is must stricter than standards suggested by Pennsylvania jurisprudence. *See, e.g., Jacobs v. Journal Publ'g Co. D/B/A/ the Albuquerque Journal*, No. 1:21-cv-00690-MV-SCY, 2022 U.S. Dist. LEXIS 88396, at *21 (D.N.M. May 17, 2022) ("California has been extremely clear that this narrow version of the discovery rule does not apply to materials available to the public, no matter how small or limited the circulation."). *Contrast, e.g., Bradford*, 882 F. Supp. at 1519, n. 15 ("a plaintiff who is not a member of a specialized audience of, say, a scholarly journal might

16

stake a stronger claim for a discovery rule.").

In this case, the exact contents of any private correspondence are unknown, and even if they could be said to relay the same subject matter, the District Court is mistaken in treating them in tandem for purposes of engaging in fact-specific statute of limitations analyses, which must be applied to each defamatory statement separately.

Defendants' additional assertions regarding why Mr. Leisten should not have been permitted amend his complaint were not addressed by the District Court, and accordingly, are beyond the subject of this appeal.

5. **The Interests of the Parties Are Appropriate Considerations in Determining Applicability of the Statute of Limitations.**

As set forth in Mr. Leisten's opening brief, the Pennsylvania Supreme Court has expressed the need to apply the statute of limitations in a way that "properly balances the interests of the plaintiff and defendant" and eliminates the possibility of abuse [by publishers]. *Dominiak*, 266 A.2d at 629. Contrary to Appellants' assertions, Appellant has not argued for a "freewheeling 'interest balancing' approach that allows courts to disregard the statute of limitations and single publication rule." Appellants' Brief, p. 28. Rather, Appellant simply asserts that it is error not to consider the interests of the Parties in adopting what is essentially a per se rule for online defamation; it is error to predict how the Pennsylvania Supreme

Court will rule on these issues without examining the factors that Court has previously indicated were important to its decisions.

## **CONCLUSION**

For all of the foregoing reason, as well as for those reasons set forth in Mr. Leisten's opening Brief, Appellant Leisten respectfully asks this Court to vacate Judge Weigand's January 19, 2022, Order and remand to the District Court with instructions to (1) reject District Judge Lenihan's Report and Recommendation; (2) deny Defendants' Motion to Dismiss Plaintiff's Complaint as Time-Barred; and (3) order Defendants to file a substantive Answer to the Complaint in accordance with the Federal Rule of Civil Procedure.

Respectfully submitted,

January 4, 2023

s/*Blair T. Preiser*
Blair T. Preiser, Esq.
Pa. Bar No. 208406
The Lynch Law Group, LLC
501 Smith Drive, Ste. 3
Cranberry Twp., PA 16066
bpreiser@lynchlaw-group.com
T:  724-776-8000
F:  724-776-8001

## **CERTIFICATIONS**

I, Blair T. Preiser, Esq., certify that I was admitted to appear before this Honorable Court on or around September 12, 2022.

I further certify that the text of the electronic brief is identical to the text contained in the paper copies submitted to this Court and that the Webroot Endpoint Protection CE 22.4 v. 9.0.32.60 virus detection program was run on all documents submitted electronically, and no threats were detected.

                                          s/*Blair T. Preiser*
                                          Blair T. Preiser, Esq.
                                          Pa. Bar No. 208406
                                          The Lynch Law Group, LLC
                                          501 Smith Drive, Ste. 3
                                          Cranberry Twp., PA 16066
                                          bpreiser@lynchlaw-group.com
                                          T:  724-776-8000
                                          F:  724-776-8001

                                          *Attorney for Appellant Daniel Leisten*

# CERTIFICATE OF SERVICE

I hereby certify that on this 4th day of December 2023, a true and correct copy of the foregoing **APPELLANT'S REPLY BRIEF** was served upon the following counsel of record for Defendants via the Court's CM/ECF:

> Elizabeth Seidlin-Berstein, Esquire
> BALLARD SPAHR LLP
> 1735 Market Street, 51st Floor
> Philadelphia, PA 19103-7599
> seidline@ballardspahr.com

<i>s/ Blair T. Preiser</i>
Blair T. Preiser, Esq.